IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL MILLER GUENTHNER,                          2:12-CV-01546-BR

        Plaintiff,                          OPINION AND ORDER

v.

MARTINEZ, R.N. of the Snake
River Correctional
Institution, in her Official
and Individual Capacity;
BRADFORD, R.N. of the Snake
River Correctional
Institution, in her Official
and Individual Capacity;
BONNER, R.N. of the Snake
River Correctional
Institution, in her Official
and Individual Capacity;
WICK, R.N. of the Snake River
Correctional Institution, in
her Official and Individual
Capacity; DR. S. SHELTON,
Health Services Director for
Policies for the Department
of Corrections, in his
Official and Individual
Capacity; CLEMENTS, R.N. of
the Snake River Correctional
Institution, in her Official
and Individual Capacity,

        Defendants.


1 - OPINION AND ORDER

WILLIAM V. DEATHERAGE
EDWARD H. TALMADGE
BRENT N. WILKINS
Frohnmayer Deatherage
2592 East Barnett Road
Medford, OR 97504
(541) 779-2333

      Attorneys for Plaintiff

ELLEN ROSENBLUM
Attorney General
MICHAEL R. WASHINGTON
Assistant Attorney General
1162 Court Street N.E.
Salem, OR 97301
(503) 947-4700

      Attorneys for Defendants

BROWN, Judge.

This matter comes before the Court on Defendants' Motion
(#26) for Summary Judgment.  For the reasons that follow, the
Court **GRANTS** Defendants' Motion.


## BACKGROUND

On February 17, 2011, Plaintiff Paul Miller Guenthner, an
inmate at Snake River Correctional Institution (SRCI), underwent
surgery on his right shoulder at St. Alphonsus Medical Center.

On February 18, 2011, Richard Davis, M.D., treating surgeon,
prepared a Discharge to Home Medication List for Plaintiff in
which, among other things, Dr. Davis prescribed hydrocodone 5
mg/acetaminophen (Vicodin) and Celebrex (NSAID) for pain,

2 - OPINION AND ORDER

directed Plaintiff to have his dressing changed after 24 hours,
and set out detailed instructions for shoulder exercises for
Plaintiff to perform for the four weeks following surgery.

On February 19, 2011, Plaintiff was discharged from
St. Alphonsus.  In a handwritten communication to SRCI, Dr. Davis
prescribed Percocet (oxycodone 5 mg/acetaminophen) and Celebrex
for pain management.  At SCRI J. Elliott-Blakeslee, M.D.,
treating physician, reviewed Dr. Davis's orders and replaced
Plaintiff's prescriptions for Celebrex with a different NSAID
(Naprosyn) and Percocet with a long-acting morphine (MS Contin)
because Celebrex and Percocet were not available at SRCI.  SCRI
medical staff provided Plaintiff with Dr. Davis's discharge
instructions related to shoulder exercises, instructed Plaintiff
to do the shoulder exercises as set out by Dr. Davis, and gave
Plaintiff an arm sling.  At 6:55 p.m. on February 19, 2011, SCRI
medical staff gave Plaintiff a dose of MS Contin and returned
Plaintiff to general population.

At 7:30 a.m. on February 20, 2011, Plaintiff was seen by an
SCRI nurse and complained of pain at a level of nine out of ten.
The nurse contacted Dr. Elliott-Blakeslee by telephone.
Dr. Elliott-Blakeslee prescribed short-acting Vicodin to be
administered to Plaintiff in the morning and at noon.

At 11:30 a.m. on February 20, 2011, SRCI medical staff
changed the dressing on Plaintiff's shoulder.  Medical staff

3 - OPINION AND ORDER

noted 16 staples were intact and there was not any drainage. Medical staff cleaned Plaintiff's suture area, applied an antibiotic ointment, and redressed Plaintiff's wound.  Plaintiff reported a pain level of seven out of ten.  Medical staff gave Plaintiff morphine and Naprosyn.

On February 21, 2011, Plaintiff reported to medical staff that he thought there had been "mistakes about [his] pain medication."  Decl. of Steve Shelton, Ex. 2 at 23.  Specifically, Plaintiff reported a pain level of nine out of ten and stated he did not believe his medication was strong enough.  Medical staff reviewed Plaintiff's chart and Dr. Elliott-Blakeslee's orders and placed a telephone call to Dr. Elliott-Blakeslee.

On February 22, 2013, Dr. Elliott-Blakeslee "clarified" Plaintiff's MS Contin order to 15 mg twice a day for 14 days. Medical staff also sent a recommendation to the Therapeutic Level of Care Committee (TLC) for Plaintiff to have a follow-up appointment with Dr. Davis in two weeks.

On February 23, 2011, Plaintiff requested more Naproxen[1] because it "helps with morphine" and reported he had only two pills left.  Medical staff scheduled Plaintiff for a medical review by a doctor.  Also on February 23, 2011, the TLC approved Plaintiff for a follow-up appointment with Dr. Davis in two weeks.

---

[1] Naproxen is the generic name of Naprosyn.

4 - OPINION AND ORDER

On February 24, 2011, Dr. Elliott-Blakeslee approved Plaintiff for more Naproxen.

On February 24, 2011, Plaintiff filed a grievance in which he complained that medical staff had not provided the medications prescribed by Dr. Davis and instead substituted other pain medications.  Plaintiff reported he had pain of eight or nine out of ten after physical therapy, but he believed he would not suffer a similar level of pain if he received the specific medications prescribed by Dr. Davis.  Plaintiff noted Oregon Department of Corrections (ODOC) policy prohibits inmates in general population from receiving medications between 9:00 p.m. and 6:30 a.m., which caused Plaintiff to suffer breakthrough pain beginning at "4 or 5 am."  Shelton Decl., Ex. 3 at 4.

On February 28, 2013, Plaintiff was seen by Dr. Davis, who recommended Plaintiff take Norco (hydrocodone/acetaminophen) or Vicodin and continue with MS Contin for two weeks.  Dr. Davis also recommended Plaintiff continue to work on the range-of-motion exercises as directed by Dr. Davis and to have another follow-up appointment in four weeks.

On February 28, 2011, Dr. Elliott-Blakeslee wrote Plaintiff a prescription for Vicodin to be taken twice a day as needed for four weeks.

On March 2, 2011, the TLC approved two- and four-week follow-up appointments for Plaintiff with Dr. Davis.

5 - OPINION AND ORDER

On March 4, 2011, Plaintiff reported to SRCI medical staff that he needed "more pain med coverage." Shelton Decl., Ex. 2 at 22. Medical staff noted Plaintiff was currently taking Vicodin and MS Contin. Medical staff scheduled Plaintiff to see Dr. Elliott-Blakeslee to review pain-control options.

On March 9, 2011, Dr. Elliott-Blakeslee saw Plaintiff, who reported his MS Contin was wearing off after eight hours and causing him to suffer pain beginning at three or four o'clock in the afternoon and again at three or four o'clock in the morning. Plaintiff noted he did not have any NSAIDs to keep him from experiencing pain at those times until "medline" when his MS Contin was administered again. Dr. Elliott-Blakeslee prescribed Naprosyn, discontinued Vicodin, and prescribed Norco for Plaintiff to take twice a day for three weeks.

On March 22, 2011, Nurse Manager J. Wick responded to Plaintiff's February 24, 2011, grievance and noted Dr. Elliott-Blakeslee had reviewed Dr. Davis's discharge orders and had written "the appropriate orders" related to Plaintiff's medication and schedule. Shelton Decl., Ex. 3 at 5. Nurse Manager Wick also set out the timeline of Plaintiff's various treatments by SRCI medical staff.

On March 23, 2011, Nurse Manager Wick provided a second response to Plaintiff's February 24, 2011, grievance in which she noted ODOC's policies regarding administration of medication to

general population inmates "are reviewed by our Medical

[D]irector and the Policy Comm. one time per year."  Shelton

Decl., Ex. 3 at 4.

On March 23, 2011, Dr. Elliott-Blakeslee reviewed

Plaintiff's chart after Plaintiff submitted an Inmate

Communication report of pain.  Dr. Elliott-Blakeslee prescribed

MS Contin for Plaintiff to take at noon and at night for two

weeks.

On April 3, 2011, Plaintiff appealed Nurse Manager Wick's

responses to his February 24, 2011, grievance and requested ODOC

change its policy that prohibits general-population inmates from

receiving medication from 9:00 p.m. to 6:30 a.m.  Shelton Decl.,

Ex. 3 at 6.

On April 6, 2011, Plaintiff was seen by Dr. Davis, who noted

the x-rays of Plaintiff's shoulder "look[ed] good."  Shelton

Decl., Ex. 2 at 87.  Dr. Davis recommended weaning Plaintiff from

narcotics and giving Plaintiff Neurontin for two months.  He also

recommended Plaintiff continue working on range-of-motion

exercises and schedule a follow-up appointment in four weeks.

Also on April 6, 2011, the TLC approved Plaintiff for a

four-week follow-up appointment with Dr. Davis.

On April 29, 2011, Dr. Elliott-Blakeslee saw Plaintiff, who

reported the Neurontin was not "helping much" with his pain.

Shelton Decl., Ex. 2 at 21.  Dr. Elliott-Blakeslee increased

Plaintiff's Neurontin and prescribed Naprosyn twice a day.
Dr. Elliott-Blakeslee also referred a request to the TLC for
Ultram (an opiod pain medication) for Plaintiff even though
Dr. Davis had recommended Plaintiff be weaned from narcotics.

On May 2, 2011, Plaintiff was seen by Dr. Davis, who noted
Plaintiff was "stiff & still having pain."  Shelton Decl., Ex. 2
at 85.  Dr. Davis prescribed NSAIDS and Neurontin.  Dr. Davis
also recommended Plaintiff continue his range-of-motion
exercises, massage his right shoulder and arm, and see Dr. Davis
again in four weeks.

On May 4, 2011, the TLC approved Ultram for Plaintiff and a
follow-up appointment with Dr. Davis in four weeks.

On May 12, 2011, Steve Shelton, M.D., Director for the
Oregon Department of Corrections (ODOC) Medical Services,
responded to Plaintiff's appeal of his February 24, 2011,
grievance.  Dr. Shelton noted Dr. Davis had prescribed Percocet
every four hours for Plaintiff and Dr. Elliott-Blakeslee had
prescribed morphine, which is a "continuous or long acting
narcotic [that] provides 24-hour effective pain control for post
operative pain."  Shelton Decl., Ex. 3 at 7.  Dr. Shelton noted
Dr. Davis did not indicate in his discharge instructions that
Plaintiff needed to stay in the infirmary "for pain control or
break-thru pain," and, therefore, Plaintiff was discharged to
general population.  *Id.*  Dr. Shelton noted Plaintiff first

reported pain during his February 21, 2011, visit to medical services, and at that time Plaintiff was prescribed Vicodin twice daily through February 28, 2011. Dr. Shelton pointed out that Dr. Elliott-Blakeslee continued to follow Dr. Davis's recommendations; renewed Plaintiff's prescriptions for morphine and Vicodin; and also prescribed Norco, Neurontin, and Ultram. Dr. Shelton concluded Plaintiff had "been evaluated, proper follow up [was] provided and pain medications provided." *Id.*

On May 16, 2011, Plaintiff submitted an Inmate Communication in which he advised he did not "need medication 4 times a day . . . . I only need it on complex at AM med line and PM med line. . . . This will get me through my phy therapy twice a day." Shelton Decl., Ex. 2 at 128.

On June 2, 2011, Plaintiff appealed Dr. Shelton's review of Plaintiff's February 24, 2011, grievance to Michael Gower, Assistant Director of ODOC's Operations Division.

On June 29, 2011, Plaintiff was seen by Dr. Davis, who recommended Plaintiff continue his range-of-motion exercises, add strengthening exercises, and start adding light resistance to his exercises. Dr. Davis recommended Plaintiff follow up in two months with an x-ray of his right shoulder.

On July 13, 2011, the TLC approved an x-ray of Plaintiff's shoulder in two months.

On August 15, 2011, Dr. Elliott-Blakeslee saw Plaintiff, who

reported his shoulder was "fine [except] when he has to lift heavy boxes overhead." Dr. Elliott-Blakeslee placed Plaintiff on an overhead-lifting restriction.

On September 23, 2011, Gower responded to Plaintiff's appeal of Dr. Shelton's review of Plaintiff's February 24, 2011, grievance and noted ODOC's Medical Services Management had reviewed Plaintiff's medical file. Gower noted there was not any "mention of a pain medication problem [by St. Alphonsus staff] indicating that MS contin would not work well for your pain" at the time Plaintiff returned to SRCI from his surgery. Shelton Decl., Ex. 3 at 17. In addition, Dr. Davis "did not feel infirmary care was necessary." *Id.* Gower noted Plaintiff's "pain issues were addressed by nursing staff on several occasions and [he was] seen by your primary provider." *Id.* Gower acknowledged Plaintiff's main concern was that he "wanted different pain medication which in general population and on your schedule as needed." *Id.* Specifically, Plaintiff wanted the medications recommended by Dr. Davis to be administered in the manner set out by Dr. Davis. Gower concluded Plaintiff's "case highlights the need to educate our community [medical] partners about the care that can be administered at SRCI, but in general population and in the infirmary." *Id.*

On August 27, 2012, Plaintiff filed a *pro se* Complaint in this Court pursuant to 42 U.S.C. § 1983 against Nurse Martinez,

Nurse Bradford, Nurse Bonner, Nurse Manager Wick, Dr. Shelton, and Nurse Clements.  Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution when they (1) denied him medical attention "for 19 days after major surgery" and (2) denied him "proper medical attention for approximately 60 days total."  Compl. at ¶ 13.

On October 30, 2012, the Court appointed counsel to represent Plaintiff in this matter.

On June 17, 2013, Defendants filed a Motion for Summary Judgment.

On September 13, 2013, Plaintiff filed a Response to Defendants' Motion in which he withdrew his claims against Defendants Bradford, Bonner, and Clements.

The Court took this matter under advisement on October 10, 2013.


**STANDARDS**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*,

11 - OPINION AND ORDER

395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly
supported motion for summary judgment, the nonmoving party must
go beyond the pleadings and show there is a genuine dispute as to
a material fact for trial.  *Id.*  "This burden is not a light one.
. . .  The non-moving party must do more than show there is some
'metaphysical doubt' as to the material facts at issue."  *In re
Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)
(citation omitted).

A dispute as to a material fact is genuine "if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d
1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all
reasonable inferences in favor of the nonmoving party.  *Sluimer
v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary
judgment cannot be granted where contrary inferences may be drawn
from the evidence as to material issues."  *Easter v. Am. W. Fin.*,
381 F.3d 948, 957 (9th Cir. 2004)(citation omitted).  A "mere
disagreement or bald assertion" that a genuine dispute as to a
material fact exists "will not preclude the grant of summary
judgment."  *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-
1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)
(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.
1989)).  When the nonmoving party's claims are factually

12 - OPINION AND ORDER

implausible, that party must "come forward with more persuasive
evidence than otherwise would be necessary." *LVRC Holdings LLC
v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense
determines whether a fact is material. *Miller v. Glenn Miller
Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the
resolution of a factual dispute would not affect the outcome of
the claim, the court may grant summary judgment. *Id.*


## DISCUSSION

As noted, Plaintiff alleges Defendants Martinez, Wick, and
Shelton were deliberately indifferent to his serious medical
needs when they denied him medical attention for 19 days after
his shoulder surgery and denied him "proper" medical attention
for 60 days after his shoulder surgery. Specifically, Plaintiff
alleges Defendants violated his Eighth Amendment rights when they
(1) failed to provide him with the pain medication prescribed by
Dr. Davis administered around the clock as recommended by
Dr. Davis due to the ODOC policy that prohibits general
population inmates from receiving medication from 9:00 p.m. to
6:30 a.m. and (2) failed to obtain and to review Plaintiff's
chart from St. Alphonsus Medical Center.

**I.   Standards**

Deliberate indifference to serious medical needs is a

13 - OPINION AND ORDER

cognizable claim for violation of the Eighth Amendment
proscription against cruel and unusual punishment. *Estelle v.*
*Gamble*, 429 U.S. 97, 104 (1976). *See also Actkinson v. Vargo*,
284 F. App'x 469, 472 (9th Cir. 2008).

> To sustain [a] deliberate indifference claim, [a]
> plaintiff must] meet the following test: "First,
> the plaintiff must show a serious medical need by
> demonstrating that failure to treat a prisoner's
> condition could result in further significant
> injury or the unnecessary and wanton infliction of
> pain. Second, the plaintiff must show the
> defendant's response to the need was deliberately
> indifferent."

*Peralta v. Dillard*, No. 09-55907, 2013 WL 57893, at *3 (9th Cir.
Jan. 7, 2013)(quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th
Cir. 2006)). To satisfy the second prong (*i.e.,* that defendant's
response to the need was deliberately indifferent), a plaintiff
must show "'(a) a purposeful act or failure to respond to a
prisoner's pain or possible medical need and (b) harm caused by
the indifference.'" *Id.* (quoting *Jett*, 439 F.3d at 1096).
Deliberate indifference may be established by showing that prison
officials deny, delay, or intentionally interfere with medical
treatment or it may be demonstrated by the way prison officials
provide medical care. *Jett*, 439 F.3d at 1096.

"Mere negligence in diagnosing or treating a medical
condition, without more, does not violate a prisoner's Eighth
Amendment rights." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th
Cir. 2004)(citation omitted). *See also Wilhelm v. Rotman*, 680

14 - OPINION AND ORDER

F.3d 1113, 1122 (9th Cir. 2012)("Medical malpractice does not
become a constitutional violation merely because the victim is a
prisoner."). In addition, "a plaintiff's showing of nothing more
than a difference of medical opinion as to the need to pursue one
course of treatment over another [is] insufficient, as a matter
of law, to establish deliberate indifference." *Wilhelm*, 680 F.3d
at 1122 (quotation omitted).

## II.  Analysis

Plaintiff asserts in his Response to Defendants' Motion that
he was in excruciating pain for 19 days while he waited to see
Dr. Elliott-Blakeslee.  Plaintiff also asserts he was in
excruciating pain due to the lack of 24-hour pain management for
inmates in general population.  The record, however, does not
support an inference that SRCI medical staff failed to respond to
Plaintiff's pain or that they were indifferent to Plaintiff's
pain.  The record reflects Dr. Elliott-Blakeslee changed the
medications prescribed by Dr. Davis because those pain
medications were not available at SRCI.  Dr. Shelton testifies in
his Declaration that the medications prescribed by Dr. Elliott-
Blakeslee were of equivalent potency and met medical community
standards of pain management.

In addition, the record reflects SRCI medical staff
continually attempted to address and to reduce Plaintiff's pain
through a variety of medications throughout the 60-day period

15 - OPINION AND ORDER

following Plaintiff's surgery.  For example, SRCI staff contacted
Dr. Elliott-Blakeslee by telephone on February 20 and 21, 2011,
when Plaintiff complained of pain and Dr. Elliott-Blakeslee added
short-acting Vicodin twice a day to Plaintiff's medications of MS
Contin and Naprosyn.  On February 22, 2011, Dr. Elliott-Blakeslee
clarified Plaintiff's prescription, and Plaintiff began receiving
15 mg of MS Contin twice a day.  On February 24, 2011,
Dr. Elliott-Blakeslee approved Plaintiff for more Naproxyn.  On
February 28, 2011, Dr. Elliott-Blakeslee ordered Plaintiff to
receive Vicodin twice a day as needed for four weeks.  On
March 9, 2011, Dr. Elliott-Blakeslee prescribed Naprosyn and
prescribed Norco (10 mg hydrocordone) to be taken twice a day for
three weeks when Plaintiff reported his MS Contin was wearing off
after eight hours, which caused him to suffer pain beginning at
three or four o'clock in the afternoon and again at three or four
o'clock in the morning.  Plaintiff did not report to SCRI medical
services again until March 23, 2011, at which point Dr. Elliott-
Blakeslee prescribed MS Contin for Plaintiff to take at noon and
at night for two weeks.  On April 6, 2011, Dr. Davis recommended
weaning Plaintiff from narcotics and giving him Neurontin.
Plaintiff did not report to SRCI medical services again until
April 29, 2011, at which point Dr. Elliott-Blakeslee increased
Plaintiff's Neurontin and prescribed Naprosyn twice a day because
Plaintiff reported the Neurontin was not "helping much" with his

16 - OPINION AND ORDER

pain.  Dr. Elliott-Blakeslee also referred a request to the TLC for Ultram for Plaintiff despite Dr. Davis's recommendation to wean Plaintiff from narcotics because Plaintiff was still reporting some pain.  On May 4, 2011, the TLC approved Ultram for Plaintiff.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds no reasonable juror could conclude on this record that Defendants were deliberately indifferent to Plaintiff's medical needs either 19 days after his surgery or 60 days after his surgery.  Plaintiff, therefore, has not established Defendants violated Plaintiff's rights under the Eighth Amendment.

Accordingly, the Court grants Defendants' Motion for Summary Judgment.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#26) for Summary Judgment and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 10th day of December, 2013.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge


17 - OPINION AND ORDER