IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL MILLER GUENTHNER,            2:12-CV-01546-BR

         Plaintiff,                OPINION AND ORDER

v.

MARTINEZ, R.N. of the Snake
River Correctional
Institution, in her Official
and Individual Capacity;
BRADFORD, R.N. of the Snake
River Correctional
Institution, in her Official
and Individual Capacity;
BONNER, R.N. of the Snake
River Correctional
Institution, in her Official
and Individual Capacity;
WICK, R.N. of the Snake River
Correctional Institution, in
her Official and Individual
Capacity; DR. S. SHELTON,
Health Services Director for
Policies for the Department
of Corrections, in his
Official and Individual
Capacity; CLEMENTS, R.N. of
the Snake River Correctional
Institution, in her Official
and Individual Capacity,

         Defendants.

1 - OPINION AND ORDER

WILLIAM V. DEATHERAGE
EDWARD H. TALMADGE
BRENT N. WILKINS
Frohnmayer Deatherage
2592 East Barnett Road
Medford, OR 97504
(541) 779-2333

      Attorneys for Plaintiff

ELLEN ROSENBLUM
Attorney General
**MICHAEL R. WASHINGTON**
Assistant Attorney General
1162 Court Street N.E.
Salem, OR 97301
(503) 947-4700

      Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion (#26) for Summary Judgment. For the reasons that follow, the Court **GRANTS** Defendants' Motion.

## BACKGROUND

On February 17, 2011, Plaintiff Paul Miller Guenthner, an inmate at Snake River Correctional Institution (SRCI), underwent surgery on his right shoulder at St. Alphonsus Medical Center.

On February 18, 2011, Richard Davis, M.D., treating surgeon, prepared a Discharge to Home Medication List for Plaintiff in which, among other things, Dr. Davis prescribed hydrocodone 5 mg/acetaminophen (Vicodin) and Celebrex (NSAID) for pain,

directed Plaintiff to have his dressing changed after 24 hours, and set out detailed instructions for shoulder exercises for Plaintiff to perform for the four weeks following surgery.

On February 19, 2011, Plaintiff was discharged from St. Alphonsus. In a handwritten communication to SRCI, Dr. Davis prescribed Percocet (oxycodone 5 mg/acetaminophen) and Celebrex for pain management. At SCRI J. Elliott-Blakeslee, M.D., treating physician, reviewed Dr. Davis's orders and replaced Plaintiff's prescriptions for Celebrex with a different NSAID (Naprosyn) and Percocet with a long-acting morphine (MS Contin) because Celebrex and Percocet were not available at SRCI. SCRI medical staff provided Plaintiff with Dr. Davis's discharge instructions related to shoulder exercises, instructed Plaintiff to do the shoulder exercises as set out by Dr. Davis, and gave Plaintiff an arm sling. At 6:55 p.m. on February 19, 2011, SCRI medical staff gave Plaintiff a dose of MS Contin and returned Plaintiff to general population.

At 7:30 a.m. on February 20, 2011, Plaintiff was seen by an SCRI nurse and complained of pain at a level of nine out of ten. The nurse contacted Dr. Elliott-Blakeslee by telephone. Dr. Elliott-Blakeslee prescribed short-acting Vicodin to be administered to Plaintiff in the morning and at noon.

At 11:30 a.m. on February 20, 2011, SRCI medical staff changed the dressing on Plaintiff's shoulder. Medical staff

noted 16 staples were intact and there was not any drainage. Medical staff cleaned Plaintiff's suture area, applied an antibiotic ointment, and redressed Plaintiff's wound. Plaintiff reported a pain level of seven out of ten. Medical staff gave Plaintiff morphine and Naprosyn.

On February 21, 2011, Plaintiff reported to medical staff that he thought there had been "mistakes about [his] pain medication." Decl. of Steve Shelton, Ex. 2 at 23. Specifically, Plaintiff reported a pain level of nine out of ten and stated he did not believe his medication was strong enough. Medical staff reviewed Plaintiff's chart and Dr. Elliott-Blakeslee's orders and placed a telephone call to Dr. Elliott-Blakeslee.

On February 22, 2013, Dr. Elliott-Blakeslee "clarified" Plaintiff's MS Contin order to 15 mg twice a day for 14 days. Medical staff also sent a recommendation to the Therapeutic Level of Care Committee (TLC) for Plaintiff to have a follow-up appointment with Dr. Davis in two weeks.

On February 23, 2011, Plaintiff requested more Naproxen[1] because it "helps with morphine" and reported he had only two pills left. Medical staff scheduled Plaintiff for a medical review by a doctor. Also on February 23, 2011, the TLC approved Plaintiff for a follow-up appointment with Dr. Davis in two weeks.

---

[1] Naproxen is the generic name of Naprosyn.

4 - OPINION AND ORDER

On February 24, 2011, Dr. Elliott-Blakeslee approved Plaintiff for more Naproxen.

On February 24, 2011, Plaintiff filed a grievance in which he complained that medical staff had not provided the medications prescribed by Dr. Davis and instead substituted other pain medications. Plaintiff reported he had pain of eight or nine out of ten after physical therapy, but he believed he would not suffer a similar level of pain if he received the specific medications prescribed by Dr. Davis. Plaintiff noted Oregon Department of Corrections (ODOC) policy prohibits inmates in general population from receiving medications between 9:00 p.m. and 6:30 a.m., which caused Plaintiff to suffer breakthrough pain beginning at "4 or 5 am." Shelton Decl., Ex. 3 at 4.

On February 28, 2013, Plaintiff was seen by Dr. Davis, who recommended Plaintiff take Norco (hydrocodone/acetaminophen) or Vicodin and continue with MS Contin for two weeks. Dr. Davis also recommended Plaintiff continue to work on the range-of-motion exercises as directed by Dr. Davis and to have another follow-up appointment in four weeks.

On February 28, 2011, Dr. Elliott-Blakeslee wrote Plaintiff a prescription for Vicodin to be taken twice a day as needed for four weeks.

On March 2, 2011, the TLC approved two- and four-week follow-up appointments for Plaintiff with Dr. Davis.

On March 4, 2011, Plaintiff reported to SRCI medical staff that he needed "more pain med coverage." Shelton Decl., Ex. 2 at 22. Medical staff noted Plaintiff was currently taking Vicodin and MS Contin. Medical staff scheduled Plaintiff to see Dr. Elliott-Blakeslee to review pain-control options.

On March 9, 2011, Dr. Elliott-Blakeslee saw Plaintiff, who reported his MS Contin was wearing off after eight hours and causing him to suffer pain beginning at three or four o'clock in the afternoon and again at three or four o'clock in the morning. Plaintiff noted he did not have any NSAIDs to keep him from experiencing pain at those times until "medline" when his MS Contin was administered again. Dr. Elliott-Blakeslee prescribed Naprosyn, discontinued Vicodin, and prescribed Norco for Plaintiff to take twice a day for three weeks.

On March 22, 2011, Nurse Manager J. Wick responded to Plaintiff's February 24, 2011, grievance and noted Dr. Elliott-Blakeslee had reviewed Dr. Davis's discharge orders and had written "the appropriate orders" related to Plaintiff's medication and schedule. Shelton Decl., Ex. 3 at 5. Nurse Manager Wick also set out the timeline of Plaintiff's various treatments by SRCI medical staff.

On March 23, 2011, Nurse Manager Wick provided a second response to Plaintiff's February 24, 2011, grievance in which she noted ODOC's policies regarding administration of medication to

6 - OPINION AND ORDER

general population inmates "are reviewed by our Medical [D]irector and the Policy Comm. one time per year." Shelton Decl., Ex. 3 at 4.

On March 23, 2011, Dr. Elliott-Blakeslee reviewed Plaintiff's chart after Plaintiff submitted an Inmate Communication report of pain. Dr. Elliott-Blakeslee prescribed MS Contin for Plaintiff to take at noon and at night for two weeks.

On April 3, 2011, Plaintiff appealed Nurse Manager Wick's responses to his February 24, 2011, grievance and requested ODOC change its policy that prohibits general-population inmates from receiving medication from 9:00 p.m. to 6:30 a.m. Shelton Decl., Ex. 3 at 6.

On April 6, 2011, Plaintiff was seen by Dr. Davis, who noted the x-rays of Plaintiff's shoulder "look[ed] good." Shelton Decl., Ex. 2 at 87. Dr. Davis recommended weaning Plaintiff from narcotics and giving Plaintiff Neurontin for two months. He also recommended Plaintiff continue working on range-of-motion exercises and schedule a follow-up appointment in four weeks.

Also on April 6, 2011, the TLC approved Plaintiff for a four-week follow-up appointment with Dr. Davis.

On April 29, 2011, Dr. Elliott-Blakeslee saw Plaintiff, who reported the Neurontin was not "helping much" with his pain. Shelton Decl., Ex. 2 at 21. Dr. Elliott-Blakeslee increased

Plaintiff's Neurontin and prescribed Naprosyn twice a day. Dr. Elliott-Blakeslee also referred a request to the TLC for Ultram (an opiod pain medication) for Plaintiff even though Dr. Davis had recommended Plaintiff be weaned from narcotics.

On May 2, 2011, Plaintiff was seen by Dr. Davis, who noted Plaintiff was "stiff & still having pain." Shelton Decl., Ex. 2 at 85. Dr. Davis prescribed NSAIDS and Neurontin. Dr. Davis also recommended Plaintiff continue his range-of-motion exercises, massage his right shoulder and arm, and see Dr. Davis again in four weeks.

On May 4, 2011, the TLC approved Ultram for Plaintiff and a follow-up appointment with Dr. Davis in four weeks.

On May 12, 2011, Steve Shelton, M.D., Director for the Oregon Department of Corrections (ODOC) Medical Services, responded to Plaintiff's appeal of his February 24, 2011, grievance. Dr. Shelton noted Dr. Davis had prescribed Percocet every four hours for Plaintiff and Dr. Elliott-Blakeslee had prescribed morphine, which is a "continuous or long acting narcotic [that] provides 24-hour effective pain control for post operative pain." Shelton Decl., Ex. 3 at 7. Dr. Shelton noted Dr. Davis did not indicate in his discharge instructions that Plaintiff needed to stay in the infirmary "for pain control or break-thru pain," and, therefore, Plaintiff was discharged to general population. *Id.* Dr. Shelton noted Plaintiff first

8 - OPINION AND ORDER

reported pain during his February 21, 2011, visit to medical services, and at that time Plaintiff was prescribed Vicodin twice daily through February 28, 2011. Dr. Shelton pointed out that Dr. Elliott-Blakeslee continued to follow Dr. Davis's recommendations; renewed Plaintiff's prescriptions for morphine and Vicodin; and also prescribed Norco, Neurontin, and Ultram. Dr. Shelton concluded Plaintiff had "been evaluated, proper follow up [was] provided and pain medications provided." *Id.*

On May 16, 2011, Plaintiff submitted an Inmate Communication in which he advised he did not "need medication 4 times a day . . . . I only need it on complex at AM med line and PM med line. . . . This will get me through my phy therapy twice a day." Shelton Decl., Ex. 2 at 128.

On June 2, 2011, Plaintiff appealed Dr. Shelton's review of Plaintiff's February 24, 2011, grievance to Michael Gower, Assistant Director of ODOC's Operations Division.

On June 29, 2011, Plaintiff was seen by Dr. Davis, who recommended Plaintiff continue his range-of-motion exercises, add strengthening exercises, and start adding light resistance to his exercises. Dr. Davis recommended Plaintiff follow up in two months with an x-ray of his right shoulder.

On July 13, 2011, the TLC approved an x-ray of Plaintiff's shoulder in two months.

On August 15, 2011, Dr. Elliott-Blakeslee saw Plaintiff, who

9 - OPINION AND ORDER

reported his shoulder was "fine [except] when he has to lift heavy boxes overhead." Dr. Elliott-Blakeslee placed Plaintiff on an overhead-lifting restriction.

On September 23, 2011, Gower responded to Plaintiff's appeal of Dr. Shelton's review of Plaintiff's February 24, 2011, grievance and noted ODOC's Medical Services Management had reviewed Plaintiff's medical file. Gower noted there was not any "mention of a pain medication problem [by St. Alphonsus staff] indicating that MS contin would not work well for your pain" at the time Plaintiff returned to SRCI from his surgery. Shelton Decl., Ex. 3 at 17. In addition, Dr. Davis "did not feel infirmary care was necessary." Id. Gower noted Plaintiff's "pain issues were addressed by nursing staff on several occasions and [he was] seen by your primary provider." Id. Gower acknowledged Plaintiff's main concern was that he "wanted different pain medication which in general population and on your schedule as needed." Id. Specifically, Plaintiff wanted the medications recommended by Dr. Davis to be administered in the manner set out by Dr. Davis. Gower concluded Plaintiff's "case highlights the need to educate our community [medical] partners about the care that can be administered at SRCI, but in general population and in the infirmary." Id.

On August 27, 2012, Plaintiff filed a *pro se* Complaint in this Court pursuant to 42 U.S.C. § 1983 against Nurse Martinez,

10 - OPINION AND ORDER

Nurse Bradford, Nurse Bonner, Nurse Manager Wick, Dr. Shelton, and Nurse Clements. Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution when they (1) denied him medical attention "for 19 days after major surgery" and (2) denied him "proper medical attention for approximately 60 days total." Compl. at ¶ 13.

On October 30, 2012, the Court appointed counsel to represent Plaintiff in this matter.

On June 17, 2013, Defendants filed a Motion for Summary Judgment.

On September 13, 2013, Plaintiff filed a Response to Defendants' Motion in which he withdrew his claims against Defendants Bradford, Bonner, and Clements.

The Court took this matter under advisement on October 10, 2013.

## STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*,

11 - OPINION AND ORDER

395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). When the nonmoving party's claims are factually

implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## DISCUSSION

As noted, Plaintiff alleges Defendants Martinez, Wick, and Shelton were deliberately indifferent to his serious medical needs when they denied him medical attention for 19 days after his shoulder surgery and denied him "proper" medical attention for 60 days after his shoulder surgery. Specifically, Plaintiff alleges Defendants violated his Eighth Amendment rights when they (1) failed to provide him with the pain medication prescribed by Dr. Davis administered around the clock as recommended by Dr. Davis due to the ODOC policy that prohibits general population inmates from receiving medication from 9:00 p.m. to 6:30 a.m. and (2) failed to obtain and to review Plaintiff's chart from St. Alphonsus Medical Center.

### I. Standards

Deliberate indifference to serious medical needs is a

cognizable claim for violation of the Eighth Amendment proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). *See also Actkinson v. Vargo*, 284 F. App'x 469, 472 (9th Cir. 2008).

> To sustain [a] deliberate indifference claim, [a plaintiff must] meet the following test: "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent."

*Peralta v. Dillard*, No. 09-55907, 2013 WL 57893, at *3 (9th Cir. Jan. 7, 2013)(quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). To satisfy the second prong (*i.e.*, that defendant's response to the need was deliberately indifferent), a plaintiff must show "'(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.'" *Id.* (quoting *Jett*, 439 F.3d at 1096). Deliberate indifference may be established by showing that prison officials deny, delay, or intentionally interfere with medical treatment or it may be demonstrated by the way prison officials provide medical care. *Jett*, 439 F.3d at 1096.

"Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)(citation omitted). *See also Wilhelm v. Rotman*, 680

F.3d 1113, 1122 (9th Cir. 2012)("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In addition, "a plaintiff's showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Wilhelm*, 680 F.3d at 1122 (quotation omitted).

## II. Analysis

Plaintiff asserts in his Response to Defendants' Motion that he was in excruciating pain for 19 days while he waited to see Dr. Elliott-Blakeslee. Plaintiff also asserts he was in excruciating pain due to the lack of 24-hour pain management for inmates in general population. The record, however, does not support an inference that SRCI medical staff failed to respond to Plaintiff's pain or that they were indifferent to Plaintiff's pain. The record reflects Dr. Elliott-Blakeslee changed the medications prescribed by Dr. Davis because those pain medications were not available at SRCI. Dr. Shelton testifies in his Declaration that the medications prescribed by Dr. Elliott-Blakeslee were of equivalent potency and met medical community standards of pain management.

In addition, the record reflects SRCI medical staff continually attempted to address and to reduce Plaintiff's pain through a variety of medications throughout the 60-day period

following Plaintiff's surgery. For example, SRCI staff contacted Dr. Elliott-Blakeslee by telephone on February 20 and 21, 2011, when Plaintiff complained of pain and Dr. Elliott-Blakeslee added short-acting Vicodin twice a day to Plaintiff's medications of MS Contin and Naprosyn. On February 22, 2011, Dr. Elliott-Blakeslee clarified Plaintiff's prescription, and Plaintiff began receiving 15 mg of MS Contin twice a day. On February 24, 2011, Dr. Elliott-Blakeslee approved Plaintiff for more Naproxyn. On February 28, 2011, Dr. Elliott-Blakeslee ordered Plaintiff to receive Vicodin twice a day as needed for four weeks. On March 9, 2011, Dr. Elliott-Blakeslee prescribed Naprosyn and prescribed Norco (10 mg hydrocordone) to be taken twice a day for three weeks when Plaintiff reported his MS Contin was wearing off after eight hours, which caused him to suffer pain beginning at three or four o'clock in the afternoon and again at three or four o'clock in the morning. Plaintiff did not report to SCRI medical services again until March 23, 2011, at which point Dr. Elliott-Blakeslee prescribed MS Contin for Plaintiff to take at noon and at night for two weeks. On April 6, 2011, Dr. Davis recommended weaning Plaintiff from narcotics and giving him Neurontin. Plaintiff did not report to SRCI medical services again until April 29, 2011, at which point Dr. Elliott-Blakeslee increased Plaintiff's Neurontin and prescribed Naprosyn twice a day because Plaintiff reported the Neurontin was not "helping much" with his

pain. Dr. Elliott-Blakeslee also referred a request to the TLC for Ultram for Plaintiff despite Dr. Davis's recommendation to wean Plaintiff from narcotics because Plaintiff was still reporting some pain. On May 4, 2011, the TLC approved Ultram for Plaintiff.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds no reasonable juror could conclude on this record that Defendants were deliberately indifferent to Plaintiff's medical needs either 19 days after his surgery or 60 days after his surgery. Plaintiff, therefore, has not established Defendants violated Plaintiff's rights under the Eighth Amendment.

Accordingly, the Court grants Defendants' Motion for Summary Judgment.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#26) for Summary Judgment and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 10th day of December, 2013.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

17 - OPINION AND ORDER